UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARTA JO HIESHETTER,

                    Plaintiff,                    Case No. 1:19-cv-725

v.                                                Hon. Paul L. Maloney

BRITTIAN AMANN, *et al.*,

                    Defendants.
_____/

## OPINION
## and
## ORDER OF DISMISSAL

        This is an action brought by *pro se* plaintiff Marta Jo Hieshetter.  *See* Compl. (ECF

No. 1).   In her present lawsuit,[1] plaintiff has filed a 20-page complaint with 63 pages of

attachments.   Plaintiff's complaint names 17 defendants: Brittan Amann (plaintiff's daughter)

(sometimes referred to as "Brittian Amann"); Benjamin Amann (Brittan's husband)[2] and CEO of

Grand Rapids Foam Technologies ("GRFT")); GRFT; Jordan Kramer (plaintiff's daughter);

Attorney Pamela J. Cross (named as the "corporate attorney" for GRFT) (sometimes referred to as

"Pamel" J. Cross); "Court Administrator" Michael Tomich; Allie C. Sawyer (friend of plaintiff's

daughter); Kent County Probate Judge David M. Murkowski; Attorney Charles Clapp (plaintiff's

attorney); Michigan Governor Gretchen Whitmer; Michigan Solicitor General Fadwa Hammoud;

the State of Michigan; Robert Cahill (CEO of "Hospice"); "Hospice"; Chris Winkle (CEO of

---

[1] This is Hieshetter's fourth *pro se* lawsuit filed in this Court since 2014.  *See Hieshetter v. Sawyer*, *et al.*, 1:14-cv-176 (W.D. Mich.) (dismissed Feb. 11, 2015); *Hieshetter v. Hieshetter*, 1:15-cv-500 (W.D. Mich.) (dismissed Oct. 15, 2015); and, *Hieshetter v. Tyson Foods, Inc*, *et al.*, 1:19-cv-190 (W.D. Mich.) (dismissed Nov. 26, 2019).
[2] *See* Letter (Aug. 4, 2019) (ECF No. 1-6, PageID.43).

Sunrise Senior Living, Inc.("Sunrise")); Sunrise; and, Deborah Rost (a person connected with Sunrise). *Id.* For the reasons discussed below, this matter will be dismissed.

## I.     Plaintiff's complaint

Plaintiff is a 65-year-old Michigan resident who alleged that she is "enslaved, detained, prisoned, kept against her will and suffering abuse in Sunrise Senior Living [Center]". *Id.* at PageID.2. Plaintiff submitted documents which indicate that her daughter, Brittan Amann, filed a petition to be appointed guardian in the Kent County Probate Court, that defendant Judge Murkowski appointed Attorney Charles Clapp to represent plaintiff on the petition, that plaintiff wrote letters to Judge Murkowski contesting the appointment, and that non-party Judge Terrence J. Ackert appointed Brittan Amann as temporary guardian after the hearing. *See* Exhibits (ECF Nos. 1-3, 1-4, 1-5, 1-6, and, 1-7). On August 29, 2019, plaintiff's fiancé Fred Stampone sent a certified letter to Judge Murkowski with a rent agreement and receipt in response to the Judge's order, and advised the Judge (among other things): that plaintiff wants him to be her guardian; that he has lived with plaintiff for over 10 years; and that she "needs another cancer Treatment or she will die." Stampone Letter (ECF No. 1-12).[3]

Among plaintiff's allegations are the following: she needs a second medical opinion and cancer treatment; she contests state court proceedings with respect to her competency (plaintiff signed a Power of Attorney on June 24, 2019, "the very same day that she was declared incapacitated and incompetent"); she disputes the validity of the Power of Attorney; she wants a different "Conservator guardian"; she found out on July 5, 2019, that her daughter, defendant

---

[3] The Court notes that some years ago, Fred Stampone filed an unsuccessful *pro se* lawsuit against plaintiff's family and others in the United States District Court for the District of New Jersey. Stampone sued plaintiff's ex-husband, the husband's attorneys and law firm, Kent County Circuit Judge Hillary, the State of Michigan, and the Michigan Attorney General. Stampone alleged "that the Defendants had violated his civil rights and also alleged libel, slander, defamation of character, harassment, and other personal injury." *See Stampone v. Fopma*, 567 Fed. Appx. 69 (3d Cir. 2014) (affirming the district court's dismissal of the lawsuit for lack of personal jurisdiction).

Brittan Amann, "had stolen all of my life savings"; she has disputes with a defendant state judge and a defendant state court administrator; she wrote letters to a number state officials asking them to investigate her family members, the probate judge, Sunrise and others "for criminal activities or unethical practices"; and, she alleges that personnel at Sunrise are abusing her by "putting Gravy on my food when I have a Heart Condition". *Id.* at PageID.4-7.

Plaintiff contends that defendants are violating her federal constitutional rights as follows: 4th Amendment (unreasonable searches); 5th Amendment (depriving her of property without due process of law); 8th Amendment (cruel and unusual punishment); 13th Amendment (slavery or involuntary servitude); and 14th Amendment (due process, equal protection under the law, deprivation of property). *Id.* at PageID.7-8. Plaintiff's claims also include: denial of medical treatment; mental anguish; abuse of power; invasion of privacy; "criminal and unethical practice"; harassment; a pre-emptive wrongful death suit "in case she dies during these proceedings"; conspiracy; "Failure to Assist"; and violation of civil rights under 42 U.S.C. § 1983. *Id.* at PageID.2-3. In addition, plaintiff's complaint refers to the Court's jurisdiction "under Civil Rights, 440 Other Civil Rights, and 446 Americans with Disabilities – Other", apparently referencing "Nature of suit" categories from the Civil Cover Sheet (Compl. at PageID.3, Civil Cover Sheet (ECF No. 1-1)).

Plaintiff seeks $100 million of damages and relief including the following: a second medical opinion; more cancer treatments; emancipation from her daughter and guardian Brittan Amann and the State of Michigan; a court order to "investigate all defendants from criminal charges and being unethical"; "changing her Will"; a "protection order" against Brittan Amann "to stay away from plaintiff"; an order "for Brittan to return all of plaintiff's money", mail and papers taken from plaintiff's home; "an order for this case to go on in the event that I should die before

the end of this case"; "an order changing [plaintiff's] Last Will and Testament to leaving Brittan Amann and Jordan Kramer only one dollar each and I plaintiff Marta Hieshetter leave all my remaining money (less of the two dollars for my daughters) and assets to Frederick Stampone"; "general and special damages"; and other relief. Compl. at PageID.2-3, 20. Based on these claims, plaintiff alleged that this Court has jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1332 (diversity jurisdiction), and §§ 1343(1), (3) and (4) [sic]. *Id.* at PageID.2, 4.[4]; Civil Cover Sheet (ECF No. 1-1, PageID.21).

## II.    Lack of diversity jurisdiction

As an initial matter, the Court does not have diversity jurisdiction in this case.

Title 28 U.S.C. § 1332 authorizes district courts to exercise diversity jurisdiction only when there is complete diversity of citizenship. *Probus v. Charter Communications, LLC*, 234 Fed. Appx. 404, 407 (6th Cir. 2007) (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584, 119 S. Ct. 1563, 143 L.Ed.2d 760 (1999)). Complete diversity exists only when no plaintiff and no defendant are citizens of the same state. *Curry v. U.S. Bulk Transport, Inc.*, 462 F.3d 536, 540 (6th Cir.2006) (citing *Jerome-Duncan, Inc. v. Auto-by-Tel, LLC*, 176 F.3d 904, 907 (6th Cir.1999)).

The general rule is that for the purpose of determining diversity jurisdiction and removability, a corporation is deemed to be a citizen both of any state where it is incorporated and the state where it maintains its principal place of business. 28 U.S.C. § 1332(c)(1)

*Wolf v. Bankers Life & Casualty Co.*, 519 F. Supp. 2d 674, 678 (W.D. Mich. 2007).

---

[4] Plaintiff appears to be referring to 28 U.S.C. § 1343(a), which provides in pertinent part:

"The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person: (1) To recover damages for injury to his person or property, or because of the deprivation of any right or privilege of a citizen of the United States, by any act done in furtherance of any conspiracy mentioned in section 1985 of Title 42 . . . (3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; (4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote."

Plaintiff is a citizen of Michigan. In her complaint, plaintiff lists the following defendants as residing in or having offices in Michigan: Brittan Amann; Benjamin Amann; Michael Tomich; Judge David Murkowski; Governor Whitmer; Solicitor General Hammoud; "CEO Robert Cahill and Hospice:"; Charles Clapp; Deborah Rost; Sunrise; GRFT; and, Allie C. Sawyer. Compl. at PageID.1-2. The only defendants who are listed as residing outside of Michigan are Jordan Kramer (California) and Chris Winkle (Virginia). *Id.* Plaintiff has failed to demonstrate complete diversity jurisdiction. Accordingly, this case will proceed under the Court's federal question jurisdiction pursuant to 28 U.S.C. § 1331 ("civil actions arising under the Constitution, laws, or treaties of the United States").

### III.     Lack of subject matter jurisdiction

Plaintiff's claims against Charles Clapp, Chris Winkle, Sunrise, Deborah Rost, Robert Cahill, Hospice, GRFT, Pamela J. Cross, and Benjamin Amann will be dismissed for lack of subject matter jurisdiction. "Federal courts are courts of limited jurisdiction" which "possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Insurance Co. of America*, 511 U.S. 375, 377 (1994). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* (internal citations omitted). Federal subject-matter jurisdiction "can never be waived or forfeited," *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012), and "courts are obligated to consider *sua sponte* whether they have such jurisdiction." *Vander Boegh v. EnergySolutions, Inc.*, 772 F.3d 1056, 1064 (6th Cir. 2014). *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006) (Federal courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party.").

"[A] district court may, at any time, *sua sponte* dismiss a complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure when the allegations of a complaint are totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999).). It is well-established that this Court has a duty to read a *pro se* plaintiff's complaint indulgently. *See Haines v. Kerner*, 404 U.S. 519 (1972). However, while *pro se* pleadings are to be liberally construed, *see Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011), "this court is not required to conjure up unpled allegations," *Dietz v. Sanders*, 100 Fed. Appx. 334, 338 (6th Cir. 2004).

### A.  Defendants Clapp, Winkle, Rost, Sunrise, Cahill, and Hospice

Plaintiff's complaint alleged that defendants Clapp, Winkle, and Cahill did not return telephone calls, respond to her certified letters, or talk to her fiancé (Fred Stampone). Specifically, plaintiff claims that Charles Clapp, her attorney in the probate proceedings, did not return her telephone calls and refused to talk to her fiancé (*id.* at PageID.60); that Sunrise CEO Chris Winkle did not respond to a certified letter that stating "I am a prisoner here and I am request [sic] from permission from you to leave this facility," requesting all papers "allowing you to keep me here against my will", and requesting Winkle to investigate the kitchen (*id.* at PageID.7); and, that she sent Hospice CEO Robert Cahill of "Hospice" a certified letter "requesting him to release me from your Hospice Program." PageID.7.

Plaintiff's allegations against Deborah Rost indicate that Rost had a supervisory role at Sunrise. Plaintiff alleged that Rost told plaintiff she was in Sunrise for rehabilitation and will receive another cancer treatment when she is strong enough, that Rost refused to answer plaintiff's questions regarding "who was paying for her room and board", that Rost told Fred

Stampone that it was not allowed for him to spend the night at Sunrise[5], and that Rost reported plaintiff missing from Sunrise on August 25, 2019. *Id.* at PageID.6, 10, 12, 18. In this regard, plaintiff makes no allegations that the corporate entity, Sunrise, engaged in any wrongful conduct.

Finally, the gist of plaintiff's claim against defendant Hospice is that "they [presumably her daughters] signed me into the Hospice program" and that "people from Hospice" visited her on June 21, 2019 to explain the program. *Id.* at PageID.9, 15.

Plaintiff's allegations against defendants Clapp, Winkle, Rost, Sunrise, Cahill, and Hospice are devoid of merit because plaintiff does not allege conduct which involves a federal claim against any of the defendants. *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 89 (1998) (dismissal for lack of subject-matter jurisdiction is appropriate when a complaint is so "completely devoid of merit as not to involve a federal controversy"); *Apple*, 183 F.3d at 479. Accordingly, plaintiff's claims against defendants Clapp, Winkle, Rost, Sunrise, Cahill, and Hospice will be dismissed for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1).

### B. Defendants Benjamin Amann, GRFT, and Pamela Cross

Plaintiff claims that her son-in-law, Benjamin Amann, started the probate proceedings against her "when he hired his corporate attorney defendant Pamel [sic] J. Cross to draw up a Will for plaintiff to sign." Compl. at PageID.4. Plaintiff also alleged that GRFT is an accomplice because its funds were used by defendants. *See id.* at PageID.9. Hiring an attorney for a probate matter does not implicate a federal constitutional violation. In addition, the fact that Benjamin Amann is employed by GRTF and that he hired an attorney to represent his wife in a family probate matter does not create a federal cause of action against his employer, GRTF, or the attorney, Pamela J. Cross. Plaintiff's claims are completely void of merit and do not implicate a

---

[5] Sometimes referred to in the complaint as "Debord Frost."

federal controversy.  Accordingly, plaintiff's claims against defendants Benjamin Amann, GRFT, and Pamela Cross will be  dismissed for lack of subject matter jurisdiction.  *See* Fed. R. Civ. P. 12(b)(1).

### IV.    Failure to state a claim

The complaint does not state federal claims against the remaining defendants, the State of Michigan, Governor Whitmer, Solicitor General Hammoud, Michael Tomich, Judge Murkowski, Brittan Amann, Jordan Kramer, and Allie C. Kramer.  The Court allowed plaintiff to file this action *in forma pauperis* pursuant to § 1915.  For that reason, it must review the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B), which provides that the Court "shall dismiss" actions brought *in forma pauperis* "at any time if the court determines that . . . the action . . . (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  In determining whether a complaint should be dismissed for failure to state a claim under § 1915(e)(2), the Court applies the dismissal standard articulated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007).  *See Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010).

A complaint may be dismissed for failure to state a claim if it fails to give the defendants a fair notice of the claim and the grounds upon which it rests.  *Twombly*, 550 U.S. at 555.

> [A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Iqbal*, 556 U.S. at 678  (internal citations and quotation marks omitted).

8

In making this determination, the complaint must be construed in the light most favorable to the plaintiff, and its well-pleaded facts must be accepted as true. *Morgan v. Churchs Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). While plaintiff seeks relief from defendant for corruption, abuse of power, and discrimination, she has not alleged any facts to support those claims. A complaint based upon "an unadorned, the - defendant - unlawfully - harmed - me accusation" is insufficient to state a claim for relief. *See Iqbal*, 556 U.S. at 678.

## A.      Claims under 42 U.S.C. § 1983

Plaintiff's constitutional claims are brought pursuant to 42 U.S.C. § 1983, which "provides a civil cause of action for individuals who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of state law." *Smith v. City of Salem, Ohio*, 378 F.3d 566, 576 (6th Cir. 2004). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

In one of her previous federal cases, plaintiff filed § 1983 claims against the State of Michigan and three classes of defendants similar to those in the present case, *i.e.*, a state official, a state court judge, and a non-state actor (her ex-husband). The Sixth Circuit Court of Appeals summarily rejected plaintiff's § 1983 claims, stating in pertinent part as follows:

> Hieshetter filed her complaint pursuant to 42 U.S.C. § 1983, which requires her to prove that: 1) she was deprived of a right secured by the Constitution or laws of the United States; and 2) the deprivation was caused by a person acting under color of state law. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978). Hieshetter could not state a claim under § 1983 against her ex-husband John because he is not a "state actor" and Hieshetter failed to allege facts showing that he acted "under color of law." *See Tahfs v. Proctor*, 316 F.3d 584, 590-91 (6th Cir. 2003). As for Judge Hillary, he was entitled to judicial immunity for actions taken during the divorce proceedings. *See Mireles v. Waco*, 502 U.S. 9, 9 (1991). Hieshetter could not state a claim against [court reporter] Ludge for delaying the

production of transcripts because she did not state the deprivation of a federal constitutional or statutory right. The State of Michigan was protected by Eleventh Amendment immunity. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 67, 71 (1989). Finally, Hieshetter could not state a claim against Attorney General Schuette because he had no obligation to intervene in Hieshetter's divorce proceedings. *See DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989).

*Hieshetter v. Hieshetter, et al.*, No. 15-1194 (6th Cir. Sept. 30, 2015), slip op. at pp. 3-4.[6] The

reasoning in this succinct paragraph explains why plaintiff's § 1983 claims fail in this case.

### 1. Defendant State of Michigan

Plaintiff's § 1983 claim against the State of Michigan fails. Regardless of the form

of relief requested, the states and their departments are immune under the Eleventh Amendment

from suit in the federal courts, unless the state has waived immunity or Congress has expressly

abrogated Eleventh Amendment immunity by statute. *See Pennhurst State School & Hospital v.

Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v.

Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh

Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of

Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874,

877 (6th Cir. 1986). Accordingly, defendant State of Michigan will be dismissed pursuant to 28

U.S.C. § 1915(e)(2)(B)(ii).

### 2. Defendants Governor Whitmer and Solicitor General Hammoud

Plaintiff alleged that she wrote certified letters to Michigan's Governor and

Solicitor General stating that she was being held against her will and requesting them to investigate

the other defendants for "criminal activity and or unethical practices". Compl. at PageID.7. The

state officials' failure to respond to plaintiff's certified letters did not violate plaintiff's federal

---

[6] The Sixth Circuit's opinion appears in *Hieshetter*, 1:14-cv-176 at ECF No. 44, PageID.257-258.

constitutional rights. "[L]iability under § 1983 must be based on active unconstitutional behavior and cannot be based upon a mere failure to act." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (internal quotation marks omitted). *See, generally, DeShaney*, 489 U.S. at 196 ("our cases have recognized that the Due Process Clauses generally confer no affirmative right to governmental aid"). Accordingly, defendants Whitmer and Hammoud will be dismissed pursuant to § 1915(e)(2)(B)(ii).

### 3.     Defendant Michael Tomich

Plaintiff identified defendant Michael Tomich as a "Court Administrator" and alleged that she told Tomich "that she is Contesting Brittan [sic] Petition and Power of Attorney;" that "only if she had to choose then she wanted Frederick Stampone to be her Conservator guardian;" that Tomich testified that plaintiff "is incapacitated and incompetent;" that plaintiff did not receive a copy of Tomich's report; and that Tomich told plaintiff that the hearing could not be postponed. Compl. at PageID.5-6. It is unclear whether defendant Tomich was an "administrator" for the probate court, plaintiff's guardian ad litem, or acted in some other role. This Court cannot "conjure up" allegations to support a cause of action against this defendant. Accordingly, defendant Tomich will be dismissed pursuant to § 1915(e)(2)(B)(ii).

### 4.     Defendant Judge Murkowski

Plaintiff alleged that Kent County Probate Judge David Murkowski violated her constitutional rights with respect to aspects of her probate case. Generally, a judge is absolutely immune from a suit for monetary damages. *Mireles v. Waco*, 502 U.S. 9, 9-10 (1991) ("[I]t is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.") (internal quotations omitted); *Barrett*

*v. Harrington*, 130 F.3d 246, 254 (6th Cir. 1997); *Barnes v. Winchell*, 105 F.3d 1111, 1115 (6th Cir. 1997). Absolute judicial immunity may be overcome in only two instances. First, a judge is not immune from liability for non-judicial actions, *i.e.*, actions not taken in the judge's judicial capacity. *Mireles*, 502 U.S. at 11; *see Forrester v. White*, 484 U.S. 219, 229 (1988) (noting that immunity is grounded in "the nature of the function performed, not the identity of the actor who performed it"). Second, a judge is not immune for actions, though judicial in nature, taken in complete absence of all jurisdiction. *Mireles*, 502 U.S. at 12.

Plaintiff's allegations fail to implicate either of the exceptions to judicial immunity. With respect to the first exception, plaintiff's allegations refer to Judge Murkowsi's actions taken in his capacity as a judge in the Kent County Probate Court. With respect to the second exception, plaintiff has not alleged any facts which indicate that the judge took action against plaintiff in the absence of jurisdiction. In short, Judge Murkowski is absolutely immune from liability. Accordingly, plaintiff's claim for monetary damages against him will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii).

### 5. Defendants Brittan Amann, Kramer, and Sawyer

Plaintiff alleged that defendants Brittan Amann, Jordan Kramer, and Allie C. Sawyer interfered with her federal constitutional rights. Plaintiff's claims fail because these individuals are not state actors subject to § 1983. As discussed, to state a § 1983 claim, the plaintiff must show the violation of a right secured by the federal constitution or laws, and that the defendant deprived her of this federal right under color of state law. *See Smith*, 378 F.3d at 576; *Jones*, 840 F.2d at 360-61. In order for a private party's conduct to be under color of state law, it must be "fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).

Plaintiff alleged that Brittan Amann, the conservator of her estate, violated her constitutional rights. Assuming that the court did appoint Brittan Amann as plaintiff's conservator and guardian, plaintiff's claim fails because neither of these positions are state actors for purposes of § 1983. *Duke v. Isabella County*, No. 07-12656, 2007 WL 2005042 at *1 (E.D. Mich. July 10, 2007). *See Holley v. Deal*, 948 F. Supp. 711, 714 (M.D.Tenn.1996) ("Guardians do not represent their clients under color of state law for purposes of Section 1983 when they function as fiduciaries who must act in their ward's best interest."). *See also, Browder v. Anderson*, No. CIV.A.5:07CV-P202-R, 2008 WL 1884093 at *3 (W.D. Ky. April 28, 2008) ("The majority of the Courts to consider the issue have found that guardians are not state actors for the purposes of § 1983 because they are acting in the interests of an individual and not the state.") (citing cases).

Plaintiff also alleged that her daughter Jordan Kramer and Allie C. Sawyer (a friend of plaintiff's daughter Brittan Amann and a "hospital notary") "used Pier [sic] Pressure forcing Plaintiff to sign Power of Attorney." Compl. at PageID.9. There is no allegation that either Kramer or Sawyer were state actors when they "forced" plaintiff to sign a Power of Attorney.[7] Accordingly, defendants federal claims against Brittan Amann, Jordan Kramer, and Allie C. Sawyer will be dismissed pursuant to § 1915(e)(2)(B)(ii).

**6.    13th Amendment Claim**

Plaintiff alleged that defendants enslaved, detained, and imprisoned her contrary to the 13th Amendment, which provides that "Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the

---

[7] Plaintiff's reference to Sawyer as a "hospital notary" suggests that she was a notary public. While plaintiff did not allege that Sawyer acted in the capacity of a notary public, even if Sawyer held a notary public commission, she was not a state actor. *See Worthington v. Rose Palmer, Esq.*, No. 3:15CV410, 2015 WL 7571822 (E.D. Va. Nov. 24, 2015) ("a notary public is not a state official"), adopting the reasoning in *Williams v. Nat'l Notary Assoc.-Florida*, 2008 WL 8122804 (M.D. Fla. Nov. 4, 2008), and citing other district courts which "have reached this same conclusion", *i.e.*, *Sanders v. the Cty. of Bradford*, 2014 WL 10294769 at *5 n.6 (M.D. Pa. Nov. 21, 2014), *Hall v. Tallie*, 2014 WL 9311958 at *8 (N.D. Ala. Mar. 10, 2014), and, *Noonan v. Allen*, 2012 WL 6726711 at *1 (D. Md. Dec. 21, 2012).

United States, or any place subject to their jurisdiction." The right to be free from involuntary servitude under the 13th Amendment protects against "private as well as governmental interference." *Prieto v. Kalamazoo Metal Recyclers, Inc.*, No. 1:08-cv-706, 2008 WL 5087968 at *6 (W.D. Mich. Nov. 26, 2008). Here, plaintiff's claim that defendants violated her 13th Amendment rights by imprisoning and enslaving her are meritless. "The Thirteenth Amendment prohibits 'condition[s] in which the victim is coerced by threat of legal sanction to work off a debt to a master.' " *Alkire v. Irving*, 330 F.3d 802, 816 (6th Cir. 2003), quoting *United States v. Kozminski*, 487 U.S. 931, 943 (1988). Plaintiff was a resident at Sunrise Living Center and was receiving cancer treatment. There is no claim that defendants held her at Sunrise Living Center "by threat of legal sanction to work off a debt to a master." Accordingly, plaintiff's 13th Amendment claim will be dismissed pursuant to § 1915(e)(2)(B)(ii).

### 7. Americans with Disabilities Act

Plaintiff's complaint includes a cryptic reference to the Court's jurisdiction "under Civil Rights, 440 Other Civil Rights, and 446 Americans with Disabilities – Other". Compl. at PageID.3. This cursory statement is not sufficient to state a claim under an unidentified federal civil rights statute or the Americans with Disabilities Act (ADA). Accordingly, to the extent plaintiff claims relief under some other federal civil rights statute or the ADA, such claims will be dismissed pursuant to § 1915(e)(2)(B)(ii).

### VI. State law claims

Finally, to the extent that plaintiff seeks to invoke this Court's supplemental jurisdiction over her state-law claims, including alleged denial of medical treatment, mental anguish, abuse of power, invasion of privacy, harassment, conspiracy, and "Failure to Assist", the Court declines to exercise jurisdiction. In determining whether to retain supplemental jurisdiction,

"[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *Id.* Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012). Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Accordingly, plaintiff's state-law claims will be dismissed without prejudice.

### VII.    Conclusion

For these reasons,

 **IT IS ORDERED** that plaintiff's complaint is **DISMISSED**.

The Court has reviewed the record for determining whether any appeal would be taken in good faith. The Court finds that any appeal would be frivolous and therefore any appeal would not be taken in good faith. *See* 28 U.S.C. § 1915(a)(3); *Neitzke v. Williams*, 490 U.S. 319, 327-30 (1989).


Date: January 22, 2020                    /s/ Paul L. Maloney
                                          Paul L. Maloney
                                          United States District Judge